UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREA DENISE CALLOWAY,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 3:13-cv-05657-RJB-KLS

REPORT AND RECOMMENDATION

Noted for June 20, 2014

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On September 21, 2009, plaintiff filed an application for SSI benefits, alleging disability as of November 1, 2008, due to a bipolar disorder, posttraumatic stress disorder ("PTSD") and a bulging disc. See ECF #11, Administrative Record ("AR") 10, 118. Her application was denied both upon initial administrative review and on reconsideration. See AR 10. A hearing was held

before an administrative law judge ("ALJ") on August 29, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 25-49.

In a decision dated October 28, 2011, the ALJ determined plaintiff to be not disabled. See AR 10-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 7, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 416.1481. On August 2, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on October 10, 2013. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings, because the ALJ erred in evaluating the medical opinion evidence from Aaron James Hunt, M.D., and Nichole Seymanski, Psy.D.; (2) in assessing plaintiff's residual functional capacity; and (3) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred as alleged – and thus in determining plaintiff to be not disabled – and therefore recommends that defendant's decision to deny benefits be reversed and that this matter be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I. The ALJ's Evaluation of the Medical Opinion Evidence from Drs. Hunt and Seymanski

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence is not conclusive, "questions of credibility and resolution of

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2dat 1119 n.10.

conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Hunt

The ALJ addressed the medical opinion evidence from Dr. Hunt as follows:

> The [December 2009] opinion of consultative examiner Aaron J. Hunt, M.D., (Exhibit 4F) is assigned great weight. Dr. Hunt performed a psychiatric consultative examination on the claimant and also evaluated the claimant's mental status. He opined that though the claimant does have some mental health impairments, she is still able to manage her funds, she is able to perform simple and repetitive tasks, as well as more detailed and complex tasks, and she does have problems interacting with others, though these problems can be ameliorated with treatment. He also opined that her psychological issues limit her ability to function in the workplace, and that her emotional dysregulation likely would cause problems with her ability to handle regular stressors encountered in the workplace (Exhibit 4F/7-8). Dr. Hunt's opinions are based on his objective observations of the claimant, and are consistent with the rest of the evidence in the record.

AR 17. Plaintiff argues that despite giving Dr. Hunt's opinions great weight, the ALJ failed to adopt his opinion that she likely would have problems in handling regular stressors encountered in the workplace. The undersigned agrees.

Defendant argues the ALJ properly accounted for that limitation by finding she "**should have minimal interaction with the general public and minimal co-worker interaction due to**

**stress**." AR 14 (emphasis in original). But as pointed out by plaintiff, Dr. Hunt did not restrict the problems she would have handling regular stressors to social interactions (see AR 313), and clearly an individual can face a number of regular stressors in the workplace that have little or nothing to do with such interactions. Defendant further argues that "[w]hen an opinion does not prescribe any specific limitations on a claimant, an ALJ need not assume that the medical source intended to include any limitations." ECF #13, p. 3.[2] Dr. Hunt's opinion concerning problems handling workplace stressors, however, is fairly specific, or at least as specific as those the ALJ himself adopted in assessing plaintiff's functional capabilities. See AR 14. In addition, it is quite clear from Dr. Hunt's report that he felt plaintiff would have such problems. See 313.

Defendant argues as well that the ALJ was not required to adopt Dr. Hunt's limitation on the handling of regular workplace stressors, because his belief that that limitation was treatable suggests it was not disabling. Although Dr. Hunt did opine that the treatment he outlined earlier in his evaluation report "would likely improve [plaintiff's] ability to manage such stressors" (see id.), he was far from clear as to what the actual results of such improvement would be or even if plaintiff would fully engage in the recommended treatment:

> The claimant has limited treatment history with any interventions for her alleged problems. She has responded to some psychological treatment and would likely benefit from ongoing therapy. She has not exhausted any known treatment option and there is limited evidence to support that she would not respond to better medication management as well as improved psychotherapeutic interventions. Favorable outcomes would likely be highly variable upon this individual's willingness to participate in treatment, developed insight into the nature of her disorder and adhere to recommendations. She does appear motivated to participate in treatment,

---

[2] Defendant cites Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1222-23 (9th Cir. 2010), in support of this proposition. But Turner is not applicable here. In that case, the Ninth Circuit rejected the plaintiff's argument that the ALJ improperly adopted the testimony of the medical expert that he was not disabled due to PTSD over that of his treating physician, because it was not clear his treating physician actually found that condition to be disabling. See id. Here, though, as discussed above and as the ALJ herself noted, Dr. Hunt specifically opined that plaintiff's "emotional dysregulation" would likely cause her problems in handling regular workplace stressors. AR 313.

> though it is unclear how compliant she has actually been. Psychological interventions would likely continue to prove most beneficial. She may also benefit from additional pharmacological interventions, thought [sic] they will most likely only be palliative.
>
> . . . With intervention, as described above, I would anticipate that this claimant's prognosis would be better [than the otherwise "fair" overall prognosis being provided,] and she could have reduced overall symptoms and improved function in the future.

AR 312. In other words, while improvement under the above treatment recommendations were deemed to be likely, that improvement would not necessarily be guaranteed or consistent, let alone result in full amelioration of plaintiff's symptoms. As again pointed out by plaintiff, furthermore, the ALJ did not offer this as a reason for not adopting the limitation on workplace stressors. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not discuss).

B. Dr. Seymanski

With respect to the opinion evidence from Dr. Seymanski, the ALJ found in relevant part:

> . . . [T]he undersigned assigns little weight to the opinion of Nichole Seymanksi, Psy.D., (Exhibit 17F), who conducted a psychological evaluation of the claimant in July 2011. Dr. Seymanski diagnosed the claimant with bi-polar disorder and a generalized anxiety disorder. She also noted that the claimant had marked symptoms of depression and anhedonia and marked symptoms of social withdrawal. She also pined that the claimant would likely be impaired for a maximum of 18 months (Exhibit 14F/5). The opinion of Dr. Seymanski is assigned little weight because her opinions were based on the claimant's reporting, and the claimant's allegations are not credible. In addition, the claimant knew this evaluation was designed to determine whether she would keep her state benefits, and therefore her comments to her therapist are not credible because there is evidence of secondary gain.

AR 17. A medical source's opinion that is premised to a large extent on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's

credibility. See Morgan, 169 F.3d at 601 (9th Cir. 1999). As plaintiff points out, however, Dr. Seymanski relied on other, more objective medical evidence – such as her own observations of plaintiff and the results of the mental status examination she performed – to assess the moderate to marked mental functional limitations she assessed as well. See AR 475; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent psychiatric evidence); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for psychiatric disorder diagnosis, just as physical examination results provide basis for diagnosis of physical illness or injury). Accordingly, it is far from clear Dr. Symanski can be said to have relied primarily on plaintiff's own self-reporting.[3]

II. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

---

[3] In addition, the undersigned also agrees with plaintiff that to the extent the ALJ rejected Dr. Seymanski's opinion because the evaluation was conducted for the purpose of determining her eligibility for benefits, the ALJ erred. See Lester, 81 F.3d at 832 (purpose for which medical report is obtained does not constitute legitimate basis for rejecting it absent "evidence of actual improprieties").

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In addition to finding plaintiff "**should have minimal interaction with the general public and minimal co-worker interaction due to stress**" as noted above, the ALJ also found she had the mental residual functional capacity to "**perform simple and some detailed and more complex tasks**." AR 14 (emphasis in original). Plaintiff argues, and the undersigned agrees, that because the ALJ erred in failing to adopt all the functional limitations found by Dr. Hunt and to properly reject those found by Dr. Symanski, it cannot be said that the ALJ's mental RFC assessment accurately reflects all of her functional limitations.

Defendant argues that because Dr. Symanski's findings are consistent with the ALJ's RFC assessment, any error the ALJ may have committed in rejecting them is harmless.[4] But not all of the limitations Dr. Symanski found can be said to be adequately encompassed by that assessment. For example, it does not fully account for the moderate limitation in the ability to learn new tasks and the marked limitation in the ability to be aware of normal hazards and take appropriate precautions Dr. Symanski noted. Accordingly, the undersigned declines to find the ALJ's error harmless here.

[4] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

III. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 45-46. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 45-47. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 18-19.

Because of the ALJ's errors in evaluating the medical opinion evidence in the record and

in assessing her residual functional capacity discussed above, however, the undersigned once more agrees with plaintiff that the ALJ's step five determination cannot be said to be supported by substantial evidence. Defendant argues that determination should be upheld because the problems plaintiff likely would have in handling the regular stressors of a workplace Dr. Hunt found, do not establish that such problems would make her incapable of handling workplace stress. But given that as defendant herself notes the vocational expert testified that the jobs she identified entailed such stressors (see AR 47-48), it is far from clear that the vocational expert still would have found her to be capable of performing them had that limitation been offered at the hearing. The same thing is true with respect to the limitations regarding learning new tasks and being aware of normal hazards and taking appropriate precautions Dr. Symanski assessed. Thus, here too the undersigned finds the ALJ's errors to be harmful.

IV. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved

> before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record from Dr. Hunt and Dr. Symanski, plaintiff's residual functional capacity and her ability to perform other jobs at step five of the sequential disability evaluation process, remand for further consideration of those issues is warranted.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 20, 2014**, as noted in the caption.

DATED this 4th day of June, 2014.

Karen L. Strombom
United States Magistrate Judge